UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **WILLIAM G. HUDSON;** | § | |
| **JUSTIN R. JORDAN; and** | § | |
| **OLIVER J. BROWN,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:05-CV-03297** |
| | § | |
| **BOARD OF REGENTS OF TEXAS** | § | |
| **SOUTHERN UNIVERSITY;** | § | |
| **J. PAUL JOHNSON,** | § | |
| *in his official capacity*; | § | |
| **PRISCILLA SLADE,** | § | |
| *in her official and individual capacities;* | § | |
| **QUINTIN WIGGINS,** | § | |
| *in his official and individual capacities;* | § | |
| **KEEFUS FALLS,** | § | |
| *in his official and individual capacities;* | § | |
| **DENEEN FORD,** | § | |
| *in her official and individual capacities;* | § | |
| **BOBBY WILSON,** | § | |
| *in his official and individual capacities;* **and** | § | |
| **WILLIE MARSHALL,** | § | |
| *in his official and individual capacities,* | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. No. 76).

Having carefully considered the Amended Complaint (Doc. No. 33), the summary

judgment evidence, the Motion, all responses thereto, and all applicable law, the Court

finds that some of Plaintiffs claims must be dismissed for failure to state a claim, that the

Motion should be granted in part, and that additional briefing is needed.

## I.   BACKGROUND

Because they are entitled to have the evidence viewed in the light most favorable to their claims, the following account is taken largely from the submissions of Plaintiffs William Hudson, Justin Jordan, and Oliver Brown (collectively referred to as "Plaintiffs").  Unless otherwise noted, these facts are essentially undisputed for purposes of the instant Motion.

On December 6, 2004, Plaintiffs Hudson and Jordan, both students at Texas Southern University ("TSU"), along with Plaintiff Brown, a former TSU student, discovered a number of discarded TSU payroll documents that had been abandoned in a parking lot on TSU's campus.  At least one of the documents related to Jew Don Boney, Jr., the Assistant Director of the Mickey Leland Center at TSU.  Under the heading "Payee Name," that document listed four data entries:  a string of thirteen numbers with "Jew Don Boney" written directly beneath it, and another string of thirteen numbers with "Deidre Davis" written beneath it.  The document also appeared to show, among other things, that Boney had been paid $6,250 in the month of November, 2004.  (*See* Defs. Mot. Summ. J., Doc. No. 82, Ex. A., at 4.)

In February, 2005, Plaintiffs Hudson and Jordan circulated a satirical flyer (the "Boney flyer" or "flyer") criticizing TSU for paying Boney $75,000 per year.  (Pls.' Am. Compl., Doc. No. 33, at 14.)  The students attached two pages to the flyer.  The first attachment was the payroll document showing Boney's pay for November, 2004.  The second was a "General Student Form" printed out from TSU's "BANNER" system, a computer database of personnel information at TSU, that Plaintiff Hudson had found in the trash at some prior date in 2005.  That page showed Boney's name, his nine-digit

"ID" number, and information indicating that he was officially an undergraduate student in his freshman year. The nine-digit "ID" number was identical to the second through tenth digits of the thirteen-number "Payee Name" entry associated with Boney on the payroll document. (Defs. Mot. Summ. J., Doc. No. 82, Ex. A., at 3-4.)

Shortly after the flyer was circulated, Defendants Keefus Falls, TSU Director of Human Resources, emailed Defendant Quintin Wiggins, TSU Senior Vice President of Finance, and directed him to have Defendant Deneen Ford and another TSU security officer, Thaddeus Seals, investigate the distribution of the flyer. Falls sent a copy of this email to TSU Police Chief James Young. (Pls.' Am. Compl., Doc. No. 33, at 14-15.)

For many months prior to the circulation of the Boney flyer, Defendant Wiggins had an acrimonious relationship with Plaintiffs. He had met Plaintiffs on numerous occasions to discuss Plaintiffs' possession of the payroll documents and Plaintiffs' many allegations of corruption at TSU, which included Plaintiffs' concerns that Defendant Gayla Thomas' daughter and others were receiving improper payments from TSU. (Pls.' Am. Compl., Doc. No. 33, at 6-7.)[1] Plaintiffs believed that the payroll documents they discovered in December, 2004 proved the existence of corruption at TSU, and that TSU administrators had not taken appropriate action in response to their complaints. According to Plaintiffs, prior to one of these meetings, Defendant Wiggins allegedly approached Plaintiff Brown and warned, "You don't want someone to think you are stealing identities," a comment Plaintiff Brown interpreted as a threat. (Pls.' Am. Compl., Doc. No. 33, at 8.) Plaintiff Hudson was also allegedly terminated from his part-time job with TSU in December, 2004, after his discovery of the payroll documents, a decision that Plaintiff Hudson describes as retaliatory. (Pls.' Am. Compl., Doc. No. 33,

---

[1] Defendant Thomas has been dismissed from this lawsuit at Plaintiffs' request (Order, Doc. No. 78).

at 10.)   Additionally, beginning in January, 2005, Plaintiffs campaigned for the removal of Defendant Priscilla Slade from her position as TSU's President, personally asking her to resign, attracting local media coverage, and making allegations of TSU's corruption to Texas Governor Rick Perry and the Texas State Legislature.   (Pls.' Am. Compl., Doc. No. 33, at 10-13.)

In the shadow of this tense relationship—after the circulation of the Boney flyer and while the investigation was underway—the acrimony between the TSU administration and Plaintiffs appears to have reached its zenith.   At a previously scheduled meeting between Plaintiffs and various members of the TSU administration, Plaintiff Hudson noisily demanded "answers" to their allegations of corruption at TSU, and Defendant Wiggins allegedly had Hudson escorted out of his office.   Defendant Wiggins also allegedly told Plaintiff Brown that he had "got [Hudson and Jordan] now," informing him that it was a violation of Texas law—specifically, Texas Penal Code § 32.51(b)—to publish someone's social security number.   (Pls.' Am. Compl., Doc. No. 33, at 13-14.)[2]

The subsequent investigation of Plaintiffs Hudson and Jordan was allegedly controlled and directed by Defendants Falls and Wiggins rather than Chief Young, who believed that the matter was administrative rather than criminal.   (Pls.' Am. Compl., Doc. No. 33, at 14.)   After investigation, Defendant Ford filed a Complaining Witness Affidavit with the Harris County District Attorney's Office swearing that Hudson and Jordan had obtained, possessed and used the social security numbers of Boney and Davis, the other person listed on the TSU payroll document, without their consent and with the

---

[2] Notably, Plaintiffs' live pleadings allege, "Apparently, Wiggins believed he had the basis to punish" Hudson and Jordan. (Pls.' Am. Compl., Doc. No. 33, at 14.)

intent to defraud and harm Boney and Davis. (*See* Defs.' Mot. Summ. J., Doc. No. 76, Ex. D, Ex. E, & Ex F at 24-26.) The affidavit was then signed by the District Attorney and presented to a magistrate, and felony arrest warrants were then issued for Hudson and Jordan, charging them with "Fraudulent Use/Possession of Identifying Information." (Pls.' Resp., Doc. No. 82, Exs. 7-8.) Hudson and Jordan surrendered themselves to Harris County law enforcement, and on March 4, 2005, the Honorable Don Stricklin of Harris County District Court No. 337 dismissed the charges, without a written opinion, for lack of probable cause to arrest. (Orders of Dismissal, Doc. No. 82, Exs. 13-14.)

Primarily for their actions related to the flyer and their other allegations of corruption at TSU, Plaintiffs were also charged, at the recommendation of Defendant Willie Marshall, with violations of the TSU Student Code of Conduct. (Pls.' Am. Compl., Doc. No. 33, at 17.) Plaintiff Hudson was charged with insubordination, intentional physical or mental harm, campus disturbance, and disturbing a meeting in reference to his meeting with Defendant Wiggins, described above, in which he demanded "answers" to his allegations of corruption. (Pls.' Am. Compl., Doc. No. 33, at 17.) Plaintiff Brown, who was not directly involved in dissemination of the flyer but who was involved in the allegations of corruption at TSU, was charged with intentional physical or mental harm in reference to a January 2005 telephone discussion with a member of TSU's student government in which he was accused of using vulgarity. (Pls.' Am. Compl., Doc. No. 33, at 17-18.) Plaintiff Jordan was charged with intentional physical or mental harm, forgery, and destruction of property in reference to the flyer. (Pls.' Am. Compl., Doc. No. 33, at 17-18.)

Plaintiffs received separate hearings to discuss the administrative charges.  At Plaintiff Hudson's hearing, he asked to be represented by an attorney but was rebuffed; he was eventually suspended and ordered to take anger management and conflict resolution classes. (Pls.' Am. Compl., Doc. No. 33, at 18.)  At Plaintiff Brown's hearing, the committee panel included Derek Lockett, a TSU administrator whom Plaintiff Brown had previously accused of corruption; Plaintiff Brown was disciplined with a period of academic probation and was allegedly denied an appeal. (Pls.' Am. Compl., Doc. No. 33, at 18-19.)  Plaintiff Jordan was also disciplined with a period of probation, but "as a result of the intervention of [Defendant J. Paul] Johnson," he was allowed to appeal and the decision was overturned. (Pls.' Am. Compl., Doc. No. 33, at 19.)

Plaintiffs Hudson and Jordan subsequently brought this case against the named Defendants, requesting both legal and equitable relief.  Specifically, Plaintiffs lodge the following claims, as stated in their First Amended Complaint:

> 18.    Plaintiffs Hudson, Jordan and Brown sue Defendants Board of Regents of Texas Southern University and J. Paul Johnson in his official capacity as Chairman of the Board of Regents of Texas Southern University under 42 U.S.C. § 1983 and the First, Fourth and Fourteenth Amendments for injunctive relief asking the Court to rescind all suspensions, probations, and disciplinary related letters, and therein purge the files, records, and academic transcripts of Hudson, Jordan and Brown of such disciplinary matters.
> 19.    Plaintiffs Hudson and Jordan sue individual Defendants Wiggins, Falls, Ford, [Bobby] Wilson and Marshall under both federal and state law for malicious prosecution, false arrest and conspiracy. The federal claims are brought under the Fourth and Fourteenth Amendments, U.S.C. §§ 1983 and 1985(2).  The state claims are brought under Texas state law.
> 20.    Plaintiff Hudson sues Gayla Thomas and Hasan Jamil under 42 U.S.C. §§ 1983 and 1985 for violating his first Amendment right to protected speech.

Hudson contends, *inter alia*, that he was fired in retaliation for addressing the Board of Regents and disclosing payroll records implicating Thomas.

21.     Plaintiffs Hudson, Jordan, and Brown sue individual Defendants Slade, Wiggins, Falls, Ford, Wilson and Marshall under 42 U.S.C. § 1983 for violations of their First Amendment free speech rights, including retaliation, and for violations of their due process rights.

(Pls.' Am. Compl., Doc. No. 33, at 4-5.)[3]  Defendants have now moved for summary judgment under Federal Rules of Civil Procedure 56 as to all of Plaintiffs' claims.

## II.     LEGAL STANDARDS

"The district court may dismiss an action on its own motion under [Federal Rules of Civil Procedure] 12(b)(6) 'as long as the procedure employed is fair.'"  *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (*quoting Moawad v. Childs*, 673 F.2d 850, 851-52 (5th Cir. 1982)).  One instance in which the procedure employed is considered to be fair is when a plaintiff has "alleged his best case." *Id.* (*citing Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986)).  Under Rule 12(b)(6), "a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)).  Plaintiffs' pleadings must therefore contain factual allegations that, when assumed to be true, raise a right to relief above the speculative level.

A motion for summary judgment under Federal Rules of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a

---

[3] Like Defendant Thomas, Defendant Jamil has been dismissed from this lawsuit at Plaintiffs' request (Order, Doc. No. 78).

7

matter of law based on the evidence thus far presented.  *See* Fed. R. Civ. P. 56(c).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks

omitted).  A genuine issue of material fact exists "if the evidence is such that a reasonable

jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  This Court must view all evidence in the light most favorable to

the non-moving party and draw all reasonable inferences in that party's favor.  *Id.* at 255.


## III.   DEFENDANTS AGAINST WHOM NO CLAIM HAS BEEN STATED

As an initial matter, the Court notes that, on its face, Plaintiffs' First Amended

Complaint is inconsistent as to whether it intends to state any claim at all against

Defendant Slade.  On the one hand, Defendant Slade is not mentioned in the pleadings'

"Clarification of Claims and Parties," which purports to set out all of Plaintiffs' claims in

summary fashion. (*See* Pls.' First Am. Compl., Doc. No. 33, at 4-5.)  On the other hand,

Defendant Slade is accused of participating in an effort to retaliate against Plaintiffs for

speech that is allegedly protected under the First Amendment and otherwise deprive

Plaintiffs of their constitutional rights. (*See* Pls.' Am. Compl., Doc. No. 33, at 31-32.)

Even if these contradictory pleadings are sufficient for purposes of Federal Rules of Civil

Procedure 8, they are otherwise insufficient to state a claim against Defendant Slade.  The

only factual allegations levied against Defendant Slade are that she attended a meeting

with Defendants on December 8, 2004 during which she was informed that Plaintiffs had

found the payroll documents (Pls.' First Am. Compl., Doc. No. 33, at 8-9); that she attended a meeting with Defendants in January or February of 2005 that "was of no consequence" (Pls.' Am. Compl., Doc. No. 33, at 10); that Defendant Marshall acted "at the behest of Slade" when he recommended that Plaintiffs be administratively charged with violations of the Student Code of Conduct (Pls.' Am. Compl., Doc. No. 33, at 17); that Charlene Evans, whose "office is in the same suite as Slade's office," asked Plaintiffs questions about their accusations of corruption at TSU, offered Plaintiff Jordan a job, and offered to buy cookies from Plaintiff Jordan at possibly inflated prices, all at Defendant Slade's request (Pls.' Am. Compl., Doc. No. 33, at 22-23); and that Defendant Slade stated to Plaintiffs during a meeting in April, 2005, "By ya'll bringing up all these dead skeletons, you are jeopardizing your future and your education" (Pls.' Am. Compl., Doc. No. 33, at 26). These allegations suggest, at most, that Defendant Slade was aware of, and perhaps felt threatened by, Plaintiffs' accusations, and that she desired that they cease their criticisms of the TSU administration. But, particularly in light of the pleadings' inconsistencies, these allegations fail to raise Plaintiffs' right to relief vis-à-vis Defendant Slade above a speculative level. *Cuvillier*, 503 F.3d at 401. The pleadings are therefore insufficient to state a claim against Defendant Slade, and she must be dismissed under Rule 12(b)(6).

Additionally, Plaintiffs' live pleadings accuse Defendant Wilson of participating in a cover-up of corruption at TSU. The specific allegations against Defendant Wilson are that he befriended Plaintiff Brown for purposes of enlisting Brown's help in ending Plaintiffs Hudson and Jordan's public accusations of corruption, and then later threatened Brown with discipline if he did not cooperate, stating at one point that he "would hate to

see [Plaintiff Brown] put out of school." (Pls.' Am. Compl., Doc. No. 33, at 19-22.)

Plaintiff's Amended Complaint, however, also alleges that it was Defendant Marshall,

not Defendant Wilson, who recommended disciplinary charges, albeit "at the behest of

Slade, Wilson, Wiggins and Falls" (Pls.' Am. Compl., Doc. No. 33, at 17), and nowhere

do Plaintiffs allege an agreement between Defendants Marshall and Wilson that would be

sufficient to support a claim of conspiracy.   The only other mentions of Defendant

Wilson in the pleadings consist of allegations that he attended meetings in which some or

all Plaintiffs discussed corruption at TSU. (*See* Pls.' Am. Compl., Doc. No. 33, at 10,

18.) These allegations are insufficient to state a claim against Defendant Wilson, and he

must therefore be dismissed under Rule 12(b)(6).[4]

## IV.    OFFICIAL CAPACITY DEFENDANTS

The Eleventh Amendment bars a citizen from bringing suit against the citizen's

own state in federal court. *E.g.*, *Welch v. Tex. Dep't of Highways and Pub. Transp.*, 483

U.S. 468, 472 (1987) (*citing Hans v. Louisiana,* 134 U.S. 1 (1890)). "Branches of . . .

state universities are agencies of the State and thus are entitled to the same governmental

immunity from suit or liability as the State of Texas." *E.g., Slade v. Tex. S. Univ. Bd. of

Regents*, 232 S.W.3d 395, 398 (Tex.App.—Houston [1st Dist.] 2007, no pet.) (*citing

Tooke v. City of Mexia,* 197 S.W.3d 325, 330 n.11 (Tex. 2006) *and Wichita Falls State

Hosp. v. Taylor,* 106 S.W.3d 692, 694 n.3 (Tex. 2003)); *see also Perry v. Texas A&I*

---

[4] The Court notes that Plaintiffs have filed two complaints in this case (Doc. Nos. 1 & 33), the second of which was filed nearly a year after the case was filed; that the case has been open for nearly three years; and that trial is scheduled to begin in less than one month. The Court further notes that the insufficiency of the allegations has been argued at multiple prior hearings and was the subject of a prior Motion for Partial Judgment on the Pleadings (Doc. No. 59). The Court therefore harbors no doubt that Plaintiffs have had every opportunity to state their best case and that the procedures employed in dismissing certain claims and defendants *sua sponte* under Rule 12(b)(6) have been fair. *See Bazrowx*, 136 F.3d at 1054.

*Univ.*, 737 S.W.2d 106, 108 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (*citing Lowe v. Texas Tech University,* 540 S.W.2d 297, 298 (Tex. 1976)). "As an arm of the State, Texas Southern's Board of Regents is entitled to sovereign immunity." *Slade*, 232 S.W.3d at 398. "For purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). Therefore, Eleventh Amendment immunity also extends to all official capacity Defendants. This immunity does not, however, cover Plaintiffs' claims insofar as they request prospective injunctive relief. *See Edelman v. Jordan*, 415 U.S. 651, 664 (1974) (recognizing the Eleventh Amendment distinction between retrospective and prospective relief); *see also U.S. v. Tex. Tech Univ.*, 171 F.3d 279, 294 n.24 (5th Cir. 1999) ("Of course, citizens may, generally, pursue prospective injunctive relief against state officials.").[5]

In this case, Plaintiffs' lawsuit asks the Court to enter an injunction ordering the official capacity Defendants Board of Regents of TSU and Chairman of the Board of Regents J. Paul Johnson to wipe clean Plaintiffs' disciplinary record to the extent that it reflects violations relating to the acts underlying Plaintiffs' claims under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments. (Pls.' Am. Compl., Doc. No. 33, at 4-5.) The Court finds that this request constitutes a request for prospective injunctive relief and is not shielded by the Eleventh Amendment. *See Cox v. City of Dallas, Tex.*, 256 F.3d 281, 307-08 (5th Cir. 2001).[6]

---

[5] The Court notes that the parties have agreed with this analysis. (*See* Defs.' Mot. Summ. J., Doc. No. 76, at 6, and Pls.' Resp., Doc. No. 82, at 35.)

[6] The Court notes, however, that the request for injunctive relief only survives summary judgment to the extent that the underlying claims survive summary judgment. Put another way, Plaintiffs may not request injunctions that relate to unmeritorious federal law claims.

## V.   QUALIFIED IMMUNITY RELATING TO THE ARREST OF PLAINTIFFS HUDSON AND JORDAN

Defendants' Motion for Summary Judgment argues that Defendants Ford, Marshall, and Falls are entitled to summary judgment based on qualified immunity with regard to their response to the Boney flyer. (Defs.' Mot. Summ. J., Doc. No. 76, at 5.)  In so doing, Defendants have incorporated the arguments they originally asserted in their Motion for Partial Judgment on the Pleadings (Doc. No. 59).  Plaintiffs have likewise incorporated the arguments from their responses to that motion.

The defense of qualified immunity requires two, sequential inquiries.  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*  After finding a constitutional violation occurred, "the next, sequential step is to ask whether the right was clearly established."  *Saucier*, 533 U.S. at 201.  The Court must undertake this second inquiry "in light of the specific context of the case, not as a broad general proposition."  *Id.*  "A right is clearly established if its 'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Johnson v. Waters*, 317 F. Supp. 2d 726, 731 (S.D. Tex. 2004) (citing *Saucier*, 533 U.S. at 202); *see also Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir. 2000) ("[A]ny purported harm must stem from rights clearly established under law at the time of the incident, and the contours of that right must be sufficiently clear such that a reasonable officer would understand that his actions were violative of the right at issue.").  The dispositive inquiry is, therefore, "whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202. If the officer "reasonably but mistakenly" thought his unconstitutional actions were legal under the circumstances, he would be entitled to immunity. *Saucier*, 533 U.S. at 205 ("An officer might correctly perceive all the facts but have a mistaken understanding as to whether a particular [action] is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier*, 533 U.S. at 202 (citing *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

Neither party disputes that, if indeed Plaintiffs were arrested as a result of Defendants' malicious initiation of criminal charges without probable cause, Plaintiffs Hudson and Jordan had their constitutional rights violated in this case. The Court agrees. *See, e.g., Castellano v. Fragozo*, 352 F.3d 939, 953-54 (5th Cir. 2003) ("The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued. Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983."); *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994) ("Blackwell has asserted a clearly established constitutional right: to be free from unreasonable seizure, or not to be arrested absent

probable cause."); *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992) ("[O]ur circuit recognizes causes of action under § 1983 for false arrest, illegal detention (false imprisonment), and malicious prosecution") (citing *Brummett v. Camble,* 946 F.2d 1178, 1180 n. 2 (5th Cir. 1991)).   The more difficult question is whether each relevant Defendant's actions were so unreasonable that they are not entitled to the defense of qualified immunity.

The crux of the question is therefore whether Defendants Ford, Marshall, and Falls were reasonable in their interpretation of Texas Penal Code § 32.51(b), as that code existed in 2005.  At that time, the relevant provisions read:

> **§ 32.51. Fraudulent Use or Possession of Identifying Information**
> (a) In this section:
> (1) "Identifying information" means information that alone or in conjunction with other information identifies an individual, including an individual's:
> (A) name, social security number, date of birth, and government-issued identification number;
> . . .
> (b) A person commits an offense if the person obtains, possesses, transfers, or uses identifying information of another person without the other person's consent and with intent to harm or defraud another.
> (c) An offense under this section is a state jail felony.

TEX. PENAL CODE ANN. § 32.51(b) (Vernon Supp. 2005).

The parties disagree about whether Ford, Marshall, and Falls were reasonable, if mistaken, in believing that Plaintiffs Hudson and Jordan had the requisite "intent to harm" under § 32.51(b).  Plaintiffs suggest that the statute requires the intent to cause pecuniary harm, and that Hudson and Jordan did not intend to cause pecuniary harm to Boney or Davis.  (Pls.' Resp. to Defs.' Mot. Summ. J., Doc. No. 63, at 3.)  Defendants argue that the statute is unclear on whether the harm must be pecuniary, and that,

therefore, Ford, Marshall, and Falls did not violate clearly established law and acted reasonably for purposes of qualified immunity when they determined that they had probable cause to believe Hudson and Jordan had violated the statute. (Defs.' Mot. Partial J., Doc. No. 59, at 7-9.) The Court is not aware of any case or statute that resolves this ambiguity in § 32.51(b), and Plaintiffs have not provided any. Moreover, the requisite *mens rea* in § 32.51(b) is satisfied when an individual intends to "harm or defraud," and both "harm" and "defraud" lend themselves to reasonable interpretations that include non-pecuniary loss. In fact, the Texas Penal Code itself defines "harm" as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." TEX. PENAL CODE ANN. § 1.07(a)(25) (Vernon 2003). This definition explicitly contemplates non-pecuniary harms. The Court therefore finds that, for purposes of a qualified immunity analysis, Defendants Ford, Marshall, and Falls acted reasonably under the circumstances, and did not violate clearly established law, when they interpreted § 32.51(b) to include non-pecuniary harm.

The parties also disagree about whether Ford, Marshall, and Falls were reasonable, if mistaken, in believing that Plaintiffs Hudson and Jordan should have known that, by circulating the documents attached to the Boney flyer, they were also circulating Boney's and Davis' social security numbers. Defendants ask the Court to take judicial notice of the fact that the nine-digit number on the print-out from the TSU "BANNER" system appears to be a nine-digit social security number. The Plaintiffs, however, point out that the "BANNER" document clearly labels the nine-digit number an "ID" number, not a social security number. Furthermore, Plaintiffs argue that, in the

context of a document that appears to show Boney's academic status, there was no reason for the students to know or believe that the number was Boney's social security number.

Plaintiffs' arguments are not persuasive, even when viewing the facts in the light most favorable to Plaintiffs. It is true the "BANNER" document labels the nine-digit number an "ID" number, not a social security number; that the document lists academic data, not personal information that is similar in kind to social security number; that the number is an unbroken string of digits and therefore not formatted in a way that would make it immediately identifiable as a social security number; and that the context of that document is not one in which a reasonable person would normally expect to find a social security number. But there are two relevant facts that show that Defendants could reasonably have concluded that Plaintiffs Hudson and Jordan were or should have been aware that the numbers were social security numbers when they published them. First, when Plaintiffs distributed the "BANNER" document, they also had in their possession payroll documents with the same series of numbers on them, including the payroll document they attached to the flyer. It is entirely plausible that a reasonable person would expect to find a social security number on a payroll document; at the very least, a reasonable person who sees the same set of numbers on a payroll document and on the "BANNER" document would be given pause. Second, and more tellingly, it is undisputed that social security numbers were used as student identification numbers at TSU during the relevant time period, and that at least Plaintiff Hudson knew this before posting the flyer. Plaintiff Hudson even admitted at his deposition that his own ID number was his social security number. (Dep. of Pl. Hudson, Doc. No. 76, Ex. H, at 217.) This is undoubtedly why, by his own admission, Plaintiff Hudson reviewed Social

Security Administration information and various legal sources before posting the flyer in an attempt to ascertain the rules about whether he would be violating any law in posting the "BANNER" and payroll documents.  (Dep. of Pl. Hudson, Doc. No. 76, Ex. H, at 215-16.)  Plaintiff Jordan appears to have admitted to having reason to know that student ID numbers were also social security numbers, although he has been more reluctant in making this admission  (Affidavit of Plaintiff Jordan, Doc. No. 76, Ex. J, at 227-30.)[7] Given these two facts, and particularly the second, the Court finds that if Defendants Ford, Marshall, and Falls made any mistake in their application of § 32.51(b), the mistake was reasonable under the circumstances, and these Defendants are therefore entitled to qualified immunity from Plaintiffs Hudson and Jordan's claims under § 1983, the Fourth Amendment, and the Fourteenth Amendment relating to the Boney flyer.[8,9]

---

[7] The Court notes that at a hearing held on February 6, 2008, Defendants' counsel took the position that it was common knowledge that TSU used social security numbers as student identification numbers during the relevant time period, and Plaintiffs' counsel offered little to no argument to the contrary.  Instead, Plaintiffs' counsel stated that it was unclear whether Plaintiffs knew the numbers were social security numbers, and he relied on the fact that the pleadings and briefs on file all identify the numbers as ID numbers, not social security numbers.

[8] In finding that these Defendants are entitled to qualified immunity, the Court has considered the fact that TSU Police Chief Young may have dissented from the decision to present a Complaining Witness Affidavit to the District Attorney's office.  Apparently, Chief Young did not believe there was probable cause to arrest, and whether a criminal proceeding was the appropriate disciplinary mechanism under the circumstances.  Whether or not Chief Young's analyses were correct, they only bear on the question of qualified immunity insofar as they affect the reasonableness of Defendants' actions.  In that respect, the Court notes that a reasonable officer would be less inclined to pursue a criminal prosecution in the face of a superior officer's contrary recommendation under normal circumstances.  In this case, however, Chief Young did not himself lead the investigation, and the officers who did, Thaddeus Seals and Defendant Ford, favored making the complaint to the District Attorney.  Moreover, the fact that officers disagreed about whether probable cause existed at the time—even if one of those officers held a higher rank than the others—tends to support, not undermine, the Court's finding that Defendants' mistakes with regard to the pursuit of criminal prosecution, if any, were reasonable for purposes of a qualified immunity analysis.

[9] Although Defendants have not so moved, the Court notes, but does not hold, that the logical corollary of this analysis appears to be that all of the individual Defendants are entitled to qualified immunity to the same extent as Defendants Ford, Marshall, and Falls.  If Defendants wish to file a motion to this effect, the Court will entertain it on an expedited basis.

## VI.   42 U.S.C. § 1985(2) CONSPIRACY CLAIMS

As Defendants' Motion correctly argues (Defs.' Mot., Doc. No. 76, at 6-7), claims

for conspiracy to impede, hinder, obstruct, or defeat the due course of justice in any state

under 42 U.S.C. § 1985(2) require an allegation and evidence of discriminatory racial or

class-based animus. *See Daigle v. Gulf State Utilities Co., Local Union No. 2286*, 794

F.2d 974, 979 (5th Cir. 1986) ("[T]he second part of § 1985(2) is directed at conspiracies

to deprive equal protection; the equal protection language in § 1985(2) is paralleled in §

1985(3). Thus, we have held that the *Griffin* [*v. Breckenridge*, 403 U.S. 88 (1981)] race

of [sic] class-based animus requirement of § 1985(3) also applies to claims under the

second part of § 1985(2). *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 346 (en banc), *cert.*

*denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981)." (footnote omitted)); *see*

*also Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir. 1981).

Plaintiffs cite *Kinney v. Weaver*, 301 F.3d 253, 264 (5th Cir. 2002), for the

counterproposition, but that opinion was vacated by *Kinney v. Weaver*, 338 F.3d 432 (5th

Cir. 2003), and the subsequent en banc opinion did not include the language upon which

Plaintiffs now rely, *see Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) (en banc), *cert.*

*denied, Green v. Kinney*, 543 U.S. 872 (2004) *and Smith v. Kinney*, 543 U.S. 872 (2004).

Therefore, because Plaintiffs have neither alleged racial or class-based animus nor

provided evidence of such animus, summary judgment must be entered on all of

Plaintiffs' claims for conspiracy under 42 U.S.C. § 1985(2).[10]

---

[10] Moreover, to the extent that Plaintiffs base any § 1985(2) conspiracy claims on the obstruction of federal
court proceedings, those claims also fail, as their pleadings do not allege, and the evidence does not show, a
sufficient nexus to a proceeding in federal court. *See* 42 U.S.C. § 1985(2) ("If two or more persons in any
State or Territory conspire to deter, by force, intimidation, or threat, any party or witness *in any court of the*
*United States* from attending such court, or from testifying *to any matter pending therein*, freely, fully, and
truthfully, or to injure such party or witness in his person or property on account of his having so attended
or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror *in any such*

## VII.  STATE LAW CONSPIRACY, MALICIOUS PROSECUTION, AND FALSE ARREST CLAIMS

Plaintiffs' state law conspiracy claims fail as a matter of law because Plaintiffs have neither alleged facts tending to show a specific agreement to commit an unlawful, overt act, nor provided any evidence thereof. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998); *see also Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 857 (Tex.1968) ("There must be an agreement or understanding between the conspirators to inflict a wrong against, or injury on, another, a meeting of minds on the object or course of action, and some mutual mental action coupled with an intent to commit the act which results in injury; in short, there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy." (internal quotation and citation omitted)).

As to Plaintiffs' state law claims for malicious prosecution and false arrest, more briefing is required before the Court can properly adjudicate Defendants' Motion with respect to these state law claims. Specifically, the Court will benefit from further briefing regarding whether Judge Stricklin's ruling on March 4, 2005 that there was no probable cause to arrest Plaintiffs Hudson and Jordan has any preclusive effect on the Court.

## VIII.  FIRST AMENDMENT CLAIMS

Defendants request summary judgment on Plaintiffs' First Amendment claims for the sole reason that Plaintiffs' speech constituted "insubordination and/or fighting words, which is not protected by the First Amendment." (Defs.' Mot. Summ. J., Doc. No. 76, at

---

court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror . . . .") (emphases added); *see also Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir. 1981) ("[P]laintiffs seeking to recover under [the first part of § 1985(2)] must show a nexus between the alleged conspiracy and a proceeding in federal court.").

13.) They maintain that "[w]hether speech is entitled to First Amendment protection is a question of law." (Defs.' Mot., Doc. No. 76, at 13.)  In the instant case, however, there are genuine disputes of material fact about what, precisely, was said by Plaintiffs Hudson and Brown, including what the tone, manner, and context of that speech were. Defendants maintain that the speech was insubordinate and aggressive, while Plaintiffs maintain that, viewed in context, it was not; the evidence on this point presents clear factual disputes. (*Compare, e.g.*, Defs.' Mot. Summ J., Doc. No. 76, Exs. DD and FF, *with* Aff. of Pl. Hudson, Doc. No. 76, Ex. H, at 85-93; *compare, e.g.,* Defs.' Mot. Summ. J., Doc. No. 76, Exs. M, O, and P *with* Aff. of Pl. Brown, Doc. No. 82, Ex. 16, at 5-8, *and* Aff. of Pl. Jordan, Doc. No. 76, Ex. 28, at 2.)  Resolving these disputes will require sensitive judgments about witness credibility, thus rendering summary judgment inappropriate.[11]

## IX.    DUE PROCESS CLAIMS

Defendants' Motion requests summary judgment as to Plaintiffs' due process claims, arguing that the disciplinary procedures used by TSU comported with constitutional requirements for substantive due process. (Defs.' Mot. Summ. J., Doc. No. 76, at 17-20.)  Defendants note that TSU afforded each Defendant a hearing and allowed a form of cross-examination.  They also point out that, although Plaintiff Hudson was denied his request for an attorney, Plaintiff Hudson has not cited a policy, a statute, or a case showing that he was entitled to one.  Defendants further argue that Plaintiff Brown was not arbitrarily denied an appeal, but instead was denied an appeal because he failed

---

[11] It is undisputed that TSU reversed Plaintiff Jordan's disciplinary decision on appeal, and he was not ultimately punished.  His claims relating to any alleged violation of his First Amendment or due process rights are therefore moot.

to provide evidence that contradicted the disciplinary committee's decisions. (*See* Defs.' Mot Summ J., Doc. No. 76, Ex. Z.) Defendants also note that Plaintiff Brown has not provided evidence connecting the allegedly prejudicial inclusion of Derek Lockett on his hearing panel to the committee's ultimate decision. (*See* Defs' Mot. Summ. J., Doc. No. 76, Ex. AA.) Defendants also write, in a footnote, "Plaintiffs have not claimed that Defendants denied them notice or a right to be heard. . . . Thus, Defendants assume Plaintiffs are not claiming a violation of their procedural Due Process rights." (Defs.' Mot. Summ. J., Doc. No. 76, at 17.)[12]

In their Response, Plaintiffs' argument amounts to just one sentence: "Under *Goss v. Lopez*, 419 U.S. 565, 578 n.8 (1975), Brown was entitled to notice and an opportunity to be heard." (Pls.' Resp., Doc. No. 82, at 35.) Clearly, this response is insufficient to counter Defendants' arguments regarding substantive due process— arguments which, it bears mention, the Court finds persuasive. Moreover, *Goss* fails to support Plaintiffs' due process claims, for many reasons. First, that case is not clearly on point, as it addressed discipline in public high school, not at a public university, 419 U.S. at 568, and Plaintiffs have not cited case law applying *Goss* in a university context. Second, while the Court acknowledges that the due process interests that *Goss* vindicated are implicated here with regard to Plaintiff Hudson, who was suspended, they are not implicated with respect to Plaintiff Brown, who was not. *See id.* at 579 ("The student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences."). Third, *Goss*'s broader due process principles do not support Plaintiffs' claims. *Goss* states that "the interpretation and application of the Due

---

[12] As noted above, TSU reversed Plaintiff Jordan's disciplinary decision on appeal, and he was not ultimately punished, so his due process claims are moot.

Process Clause are intensely practical matters and that the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Id.* at 578 (citations and internal quotations omitted). To the extent that Plaintiff Brown complains that the form of the academic probation meted out was not clearly defined prior to his hearing (*see* Pls.' Response, Doc. No. 82, at 17), *Goss*'s focus on practicality and flexibility undermine rather than support that complaint. As to Plaintiff Hudson's claim that he should have been allowed to bring an attorney to his hearing, *Goss* implies the opposite when, in apparent dicta, it puts the decision whether or not to allow counsel in the hands of the disciplinarian. *Id.* at 584 (The disciplinarian "*may* then determine *himself* to summon the accuser, permit cross-examination, and allow the student to present his own witnesses. In more difficult cases, he *may* permit counsel." (emphases added)). Fourth, to the extent it applies at all, *Goss* sets a decidedly low bar for compliance with procedural due process requirements, stating, "At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given *some kind of notice* and afforded *some kind of hearing.*" *Id.* at 579 (emphases added). For these reasons, the Court finds that summary judgment for Defendants as to the due process claims of Plaintiffs Hudson and Brown is appropriate.

## X.    CONCLUSION

For these reasons, it is **ORDERED** that Defendants Slade and Wilson are **DISMISSED**. It is further **ORDERED** that Defendants' Motion for Summary Judgment

(Doc. No. 76) is **GRANTED IN PART**, and judgment is entered as to the following claims:

- All of Plaintiffs' claims against any Defendant in his, her, or its official capacity except insofar as the claims request prospective injunctive relief;

- Plaintiffs' claims under 42 U.S.C. § 1983, the Fourth Amendment, and the Fourteenth Amendment made against Defendants Ford, Marshall, and Falls, and relating to the Boney flyer;

- Plaintiffs' claims for conspiracy under 42 U.S.C. § 1985(2) and under state law; and

- The due process claims of Plaintiffs Hudson and Brown.

It is further **ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 76) is **DENIED** as to the First Amendment claims of Plaintiffs Hudson and Brown.

It is further **ORDERED** that Plaintiff Jordan's due process claims and his claims under the First Amendment are **MOOT**.

Finally, the parties shall file additional briefing as to the preclusive effect on this litigation, if any, of Judge Stricklin's ruling on March 4, 2005 that there was no probable cause to arrest Plaintiffs Hudson and Jordan. The Court will set a due date for this additional briefing after consultation with the parties.

**IT IS SO ORDERED.**

**SIGNED** this _14th_ day of July, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT

23